# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **J.M. SMITH CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-1483** |
| **CIOLINO PHARMACY WHOLESALE** | **SECTION: "A" (4)** |
| **DISTRIBUTORS, LLC, ET AL.** | |

## ORDER

Before the Court is **J.M. Smith Corporation's Motion to Compel Compliance with Subpoena Duces Tecum (R. Doc. 103)**, filed by Plaintiff, J.M. Smith Corporation, ("J.M. Smith") seeking an order from this Court requiring non-party, McKesson Corporation, ("McKesson") to produce responsive documents in accordance with the *subpoena duces tecum* served on it by J.M. Smith. J.M. Smith also requests attorney's fees. McKesson opposes the motion. (R. Doc. 118). The motion was heard with oral argument on July 18, 2012 and disposed of at the hearing.

McKesson has also filed a **Cross-Motion to Quash Subpoena (R. Doc. 115)**, seeking an order quashing R. Doc. 103. McKesson's motion is opposed. (R. Doc. 133). McKesson's motion was noticed for submission on July 25, 2012, but was disposed of at the July 18, 2012 hearing.

### I.   Factual Background

On May 17, 2010 J.M. Smith filed this breach of contract lawsuit as a result of alleged unpaid balances owed to it by Defendants. J.M. Smith's complaint alleges that Defendants, Distributors, maintained an open account with J.M. Smith to acquire certain pharmaceuticals. (R. Doc. 1, ¶ 4). J.M. Smith alleges that Defendants, Distributors, owe it $654,336.51 for goods sold and delivered to Ciolino Pharmacy between November 2009 through December 2009. (R. Doc. 1, ¶ 4). J.M. Smith also alleges that Defendant, Steven F. Ciolino, the director of Ciolino Pharmacy, personally guaranteed the debt of Ciolino Pharmacy. (R. Doc. 1, ¶ 5). As a result, J.M. Smith seeks

damages and legal interest.

On July 19, 2010, Defendant filed an answer and counterclaim against J.M. Smith, alleging breach of contract and unfair trade practices based on J.M. Smith's withdrawal from the New Orleans market and termination of the contract. (R. Doc. 10, ¶¶ 47, 49, 51, 53, 55).

As to J.M. Smith's Motion to Compel, on March 23, 2012, J.M. Smith argues that it issued subpoenas to the pharmaceutical distributors, including McKesson, who Defendants have alleged in their counter-suit charge higher prices than J.M. Smith. (R. Doc. 103-1, p. 2). In response, counsel for McKesson sent a letter to counsel for J.M. Smith, in which he objected to the subpoena on the basis that the information and documents requested are confidential and proprietary, given that J.M. Smith is a competitor of McKesson. (R. Doc. 103-3). In response, J.M. Smith drafted a protective order for the parties to sign and submit to the Court. (R. Doc. 103-1, p. 3). However, as of the date of this Order, no suitable Protective Order has been entered into by the parties. In opposition to McKesson's Motion to Quash, J.M. Smith argues that McKesson has conceded that at least a portion of the documents are relevant. (R. Doc. 133, p. 1).

## II.  Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer*

*Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)) Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C). In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. Fed.R.Civ.P. 26(b)(2)(C)(iii).

### III. Analysis

#### A. Motion to Compel

As to J.M. Smith's Motion to Compel, on March 23, 2012, J.M. Smith argues that it issued subpoenas to the pharmaceutical distributors who Defendants allege, in their countersuit, charged higher prices than J.M. Smith. (R. Doc. 103-1, p. 2). These pharmaceutical distributors included non-party, McKesson. *Id.* The subpoena requested, among other things, (1) communications with the Defendants; (2) orders and invoices for pharmaceutical products with the Defendants; (3) cost and pricing information; (4) payment issues with the Defendants; and, (5) any disputes, such as lawsuits or arbitrations, with the Defendants. *Id.* In response, counsel for McKesson sent a letter to counsel for J.M. Smith, in which he objected to the subpoena on the basis that the information and

documents requested are confidential and proprietary, given that J.M. Smith is a competitor of McKesson. (R. Doc. 103-3). In response, J.M. Smith drafted a protective order for the parties to sign and submit to the Court. (R. Doc. 103-1, p. 3). However, as of the date of this Order, no suitable Protective Order has been entered into by the parties. J.M. Smith now argues that because McKesson failed to respond with any documents and the documents are relevant and they should be produced, that the Court should both compel McKesson to produce the documents and be required to pay J.M. Smith's costs and fees associated with the instant motion. (R. Doc. 103-1, pp. 4-5).

McKesson has filed both an opposition to J.M. Smith's Motion to Compel (R. Doc. 118), and a Motion to Quash (R. Doc. 115). The arguments and supporting exhibits McKesson presents in these two documents are identical. *Compare* (R. Doc. 118, pp. 2-2), *with* (R. Doc. 115-1, pp. 2-3).[1] In these two documents, McKesson argues that the motion should be denied for several reasons. McKesson argues that it is a nonparty to this litigation, and more problematically J.M. Smith is a direct competitor of McKesson and the documents sought are of a confidential and proprietary nature; and the requests are vague, overly broad and unduly burdensome. (R. Doc. 113, pp. 9-11; R. Doc. 115-1, pp. 9-11).

Further, McKesson argues that J.M. Smith has not established that it has a "substantial need" for the material because although J.M. Smith might be able to argue that the documents are "relevant," it has not satisfactorily argued that the documents are "necessary," because they are partially duplicitous with subpoena requests already propounded on C's Discount Pharmacy and the

---

[1]There are, obviously technical differences between the documents, such as the "notice of submission" and "certificate of service."

Ciolino Pharmacy. (R. Doc. 113, pp. 11-15; R. Doc. 115-1, pp. 11-15).[2] McKesson further argues that even if J.M. Smith can establish a substantial need for the documents, the request should be denied because the risk of injury to McKesson outweighs J.M. Smith's need for disclosure. (R. Doc. 113, pp. 15-17; R. Doc. 115-1, pp. 15-17).

Further, McKesson further argues that compliance with the subpoena would place an undue burden on McKesson because not all of the documents J.M. Smith seeks are relevant, J.M. Smith's requests are overly broad,[3] and J.M. Smith seeks documents covering at least the past three years, Smith did not describe the requested documents with particularity, McKesson would be unduly burdened by production of all the requested documents, and J.M. Smith seeks electronically stored information. (R. Doc. 113, pp. 18-23; R. Doc. 115-1, pp. 18-23). McKesson further argues that a protective order will not provide adequate protection to McKesson. (R. Do.c 113, p. 24; R. Doc.

---

[2] Specifically, McKesson argues that (1) Request for Production No. 30 corresponds with Subpoena Request Nos. 16 and 17; (2) Request for Production 31 corresponds with Subpoena Request Nos. 9 and 10; (3) Request for Production Nos. 36 and 37 correspond with Subpoena Request Nos. 28 and 29; (4) Request for Production Nos. 39 and 40 correspond with Subpoena Request Nos. 22 and 23; (5) Request for Production No. 41 corresponds with Subpoena Request Nos. 1-7; (6) Request for Production No. 61 corresponds with Subpoena Request Nos. 37 and 38. (R. Doc. 113, pp. 12-14; R. Doc. 115-1, pp. 12-14).

[3] Specifically, McKesson argues that J.M. Smith made fifty-six separate requests for documents, which are:
Requests 1-7: "any and all communications" from January 1, 2009 until January 1, 2012;
Requests 8-14: "any and all orders for pharmaceuticals" between January 1, 2009 and January 1, 2012;
Requests 15-20, 35: "any and all invoices for pharmaceuticals" between January 1, 2009 and January 1, 2012;
Requests 21-27: "any and all documents exchanged . . . concerning or related to wholesale acquisition cost" between January 1, 2009 and January 1, 2012;
Requests 28-34: "any and all documents exchanged . . . concerning or related to pricing for pharmaceuticals, whether name brand or generic" between January 1, 2009 and January 1, 2012;
Requests 36-42: "any and all price comparisons for pharmaceuticals" submitted between January 1, 2009 and January 1, 2012;
Requests 43-49: "any and all documents concerning or related to payment issues" from January 1, 2005 to January 1, 2012; and
Requests 50-56: "any and all documents concerning or related to disputes, including, but not limited to, lawsuits or arbitrations" from January 1, 2005 until January 1, 2012.

(R. Doc. 113, p. 15; R. Doc. 115-1, p. 15).

5

115-1, p. 24). Finally, McKesson argues that J.M. Smith is not entitled to an award of attorney's fees. (R. Doc. 113, pp. 24-27; R. Doc. 115-1, pp. 24-27).

In opposition to McKesson's Motion to Quash, J.M. Smith argues that McKesson has conceded that at least a portion of the documents are relevant, however it has failed to produce any documents responsive to the request. (R. Doc. 133, p. 1). J.M. Smith argues that McKesson's argument regarding competition is compromised by the fact that the request is between three and seven months old. *Id.* at 2. Further, Smith argues that McKesson may be protected under J.M. Smith's proposed protective order because the Court has the authority to enforce the same. *Id.* Finally, J.M. Smith argues that the Ciolino Entities' expert relies upon documents from McKesson in supporting those entities' claims for damages. *Id.*

At oral argument, J.M. Smith stated that McKesson had recently agreed to produce certain documents, mainly the invoices and payments by the Ciolino entities. However, McKesson refuses to produce their "wholesale acquisition costs,"[4] as well as their pricing information.[5] McKesson also has failed to produce certain contracts between Fast Access Specialty Therapeutics and Ciolinio Wholesale Pharmacy Distributors.[6]

As to the wholesale acquisition costs, J.M. Smith argued that they were important because Ciolino's expert report depended on the figures contained therein. However, Smith admitted that Ciolino itself does not have a copy of the Report. Smith further argued that notwithstanding Defendants' lack of the report, Defendants stated that they had communications with McKesson's

---

[4]These particular requests are found at Nos. 23-27 of R. Doc. 103-2, pp. 11-12.

[5]These particular requests are found at Nos. 28-34 of R. Doc. 103-2, pp. 12-14.

[6]A particular request for a "contract" does not exist on the face of R. Doc. 103-2. Evidence of these "contracts" comes from an Affidavit attached to McKesson's Motion in Opposition / Cross-Motion to Quash. (R. Doc. 115-2, p. 2; R. Doc. 118-1, p. 2).

counsel regarding the rebates off of wholesale acquisition costs. J.M. Smith indicated that they would be deposing Defendants' expert witness in the foreseeable future.

The Court indicated that if Defendants did not have a copy of the expert report, their report would be subject to a *Daubert* challenge if they could not substantiate it; therefore, the fact that the figures had not been provided for purposes of substantiating an expert report was irrelevant. The Court further indicated that because Smith and Defendants were competitors, relinquishing a document entitled "wholesale acquisition costs" to a competitor would be problematic. This ruling also naturally extends to McKesson's pricing information.

As to the contracts from Fast Access Specialty Therapeutics and Ciolinio Wholesale Pharmacy Distributors, the Court indicated that J.M. Smith was entitled to production, but had failed to show his inability to obtain those contracts from parties other than McKesson. The Court stated that without such a showing, burdening third party McKesson with that request was inappropriate.

### B. Attorney Fees

Because J.M. Smith's Motion was denied, the Court must consider whether, pursuant to Rule 37(a)(5)(B), award attorneys fees to McKesson. Here, a Court "must" award attorneys fees unless it finds that the motion was "substantially justified." *Id.* Here, the Court finds that the arguments presented by J.M. Smith were substantially justified, because McKesson in fact conceded in its filings that at least some of the documents J.M. Smith had requested from the parties were relevant, and J.M. Smith indicated at oral argument that Ciolino's expert report in fact referenced a portion of the discovery requests which J.M. Smith had requested.

### C. Cross-Motion to Quash Subpoena

At the conclusion of the disposition of J.M. Smith's Motion to Compel, counsel for

McKesson asked the Court about the status of its Cross-Motion to Quash. The Court noted that because the Motion to Compel had been denied, McKesson's Motion to Quash had now been rendered moot. Because the arguments contained in McKesson's Motion in Opposition to J.M. Smith's Motion to Compel and McKesson's Cross-Motion to Quash Subpoena are identical, there is no reason to discuss McKesson's Cross-Motion to Quash Subpoena in any further detail.

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that Plaintiff, J.M. Smith Corporation's, ("J.M. Smith") **J.M. Smith Corporation's Motion to Compel Compliance with Subpoena Duces Tecum (R. Doc. 103)** is **DENIED**.

**IT IS FURTHER ORDERED** that third-party, McKesson Corporation's, ("McKession") **Cross-Motion to Quash Subpoena (R. Doc. 115)** is **DENIED AS MOOT**.

New Orleans, Louisiana, this 28th day of September 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**