# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| J.M. SMITH CORPORATION | CIVIL ACTION |
| VERSUS | NO: 10-1483 |
| CIOLINO PHARMACY WHOLESALE | SECTION: "A" (4) |
| DISTRIBUTORS, LLC, ET AL. | |

## ORDER

Before the Court is a **Motion to Compel Discovery (R. Doc. 108)**, filed by Plaintiff, J.M. Smith Corporation, ("J.M. Smith") seeking an order from this Court requiring Counter-Claimants, C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc., to supplement their responses to J.M. Smith's requests for production of documents. C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. oppose the motion. (R. Doc. 113). The motion was heard with oral argument on July 18, 2012.

## I.  Factual Background

On May 17, 2010 J.M. Smith filed this breach of contract lawsuit as a result of alleged unpaid balances owed to it by Defendants. J.M. Smith's Complaint alleges that Defendants, Distributors, maintained an open account with J.M. Smith to acquire certain pharmaceuticals. (R. Doc. 1, ¶ 4). J.M. Smith alleges that Defendants, Distributors, owe it $654,336.51 for goods sold and delivered to Ciolino Pharmacy between November 2009 through December 2009. (R. Doc. 1, ¶ 4). J.M. Smith also alleges that Defendant, Steven F. Ciolino, the director of Ciolino Pharmacy, personally guaranteed the debt of Ciolino Pharmacy. (R. Doc. 1, ¶ 5). As a result, J.M. Smith seeks damages and legal interest.

On July 19, 2010, Defendant filed an answer and counterclaim against J.M. Smith, alleging breach of contract and unfair trade practices based on J.M. Smith's withdrawal from the New Orleans market and termination of the contract. (R. Doc. 10, ¶¶ 47, 49, 51, 53, 55).

On February 27, 2012, J.M. Smith argues that it propounded discovery requests upon the Counter-Claimants. (R. Doc. 108-2, p. 2). On May 2, 2012, J.M. Smith argues that the Counter-Claimants served their discovery responses. (R. Doc. 108-4).

As to the instant motion, J.M. Smith seeks an order from this Court requiring Counter-Claimants C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. to supplement their responses to its requests for production of documents. (R. Doc. 108-1, p. 1). Defendants Ciolino Pharmacy, Inc. And C's Discount Pharmacy, Inc. oppose the motion (R. Doc. 113).

## II. Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)) Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity

to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

**III.    Analysis**

In support of its Motion, J.M. Smith argues that in or around May 2012, C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. were sold to CVS. (R. Doc. 108-1, pp. 1-2).[1] J.M. Smith argues in a supplemental filing that it is seeking discovery from these two entities because as a result of the sale to CVS they could not have suffered damages beyond May 2012, although they currently allege damages through 2015. (R. Doc. 132, pp. 1-2). Specifically, J.M. Smith argues that the discovery requests it propounded upon C's Discount Pharmacy, Inc. are as follows:

> REQUEST FOR PRODUCTION NO. 75:
> Please produce any and all documents concerning a sale or a contemplated sale of you to another pharmacy retailer from January 1, 2009 until the present.
>
> REQUEST FOR PRODUCTION NO. 76:
> Please produce any and all documents exchanged between you and CVS, concerning a sale of C's Discount Pharmacy, Inc.

(R. Doc. 108-2, p. 19). The requests to Ciolino Pharmacy, Inc. are virtually identical:

> REQUEST FOR PRODUCTION NO. 75:

---

[1] J.M.Smith's wording in its supporting documents is unclear. In its Memorandum in Support of its Motion to Compel, J.M. Smith indicates that the "Retail Pharmacies" were sold to CVS, and that two entities were sold. (R. Doc. 108-1, p. 2). However, J.M. Smith's actual Motion to Compel requests an Order compelling discovery from "C's Discount Pharmacy, Inc." and "Ciolino Pharmacy, Inc." (R. Doc. 108). J.M. Smith never specifically states that the two "Retail Pharmacies" are in facts C's Discount Pharmacy, Inc. And the Ciolino Pharmacy, Inc. However, both C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. opposed J.M. Smith's Motion (R. Doc. 113), and at oral argument did not contest that they were the parties which were sold. Therefore, the Court presumes that "Retail Pharmacies," as used in J.M. Smith's Motion to Compel, means C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc.

3

>    Please produce any and all documents concerning a sale or a contemplated sale of you to another pharmacy retailer from January 1, 2009 until the present.
>
>    REQUEST FOR PRODUCTION NO. 76:
>    Please produce any and all documents exchanged between you and CVS, concerning a sale of Ciolino Pharmacy, Inc.

(R. Doc. 108-3, p. 19). The responses received to these requests were as follows:

>    RESPONSE OF ALL PLAINTIFFS-IN-COUNTERCLAIM TO REQUEST NO. 75:
>    Plaintiff-in-Counterclaim objects to this request to the extent that any responsive documents that may exist are confidential and not the subject of this litigation.
>
>    RESPONSE OF ALL PLAINTIFFS-IN-COUNTERCLAIM TO REQUEST NO. 75:
>    Plaintiff-in-Counterclaim objects to this request to the extent that any responsive documents that may exist are confidential and not the subject of this litigation.

(R. Doc. 108-4, pp. 66-67). J.M. Smith indicates that these Requests for Production of Documents are relevant to the current inquiry, are reasonably calculated to lead to the discovery of admissible evidence, and are highly probative of the amount of damages allegedly suffered by the Counter-Claimants. (R. Doc. 108-1, p. 1). J.M. Smith argues that the requested documents are necessary to determine the amount of pharmaceutical products the Counter-Claimants would have sold for five years beginning in 2010 and continuing to 2015 in order to determine what damages, if any, the Counter-Claimants suffered during that period. *Id.* at 1-2.

In opposition, C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. argue that J.M. Smith is already in possession of the information and documents is seeks, namely the sale date of the pharmacies to CVS. (R. Doc. 113, p. 2). They further argue that production of confidential documents imposes too high a burden on them because it may subject them to penalties pursuant to the terms of any confidential agreements, when the benefit is simply to confirm information that J.M. Smith already possesses. *Id.* They further contend that an interrogatory would seem to be the most appropriate avenue to obtain the desired information. *Id.*

At oral argument, J.M. Smith stated that it propounded discovery requests to ascertain the purchase price of the sale of the entities to CVS because documents relating to the sale would contain some valuation of the entities during that time period, which is relevant to the parties' damages claims in the instant suit. J.M. Smith also stated that Defendants' expert report contained valuations up until 2015, and the information of the valuation of these entities was relevant to their counterclaims for damages in this case.

The Court questioned counsel about why the valuations would have been relevant after 2012, if the entities were sold at that time, and counsel for C's Discount Pharmacy, Inc. and the Ciolino Pharmacy, Inc. indicated that although the valuation of the entities at the time of sale might be relevant, if the entities "backed off" of their current damage estimations - which went through 2015 - then the valuation would no longer be relevant. The Court noted that to the extent any information contained in the expert reports for periods after the actual sale of these entities remained in expert reports or elsewhere, it could be adequately disposed of by raising the appropriate legal challenge limiting the damages to the time of sale and not continuing until 2015.

The Court indicated, however, that the valuation of the entities at the time of sale would be relevant, and overruled Defendants' objection in its requests accordingly. The Court ordered Defendants to produce documents concerning the valuation of C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. at the time of their sale to CVS, that were used for purposes of the sale.[2]

However, the Court indicated that J.M. Smith's request was overbroad because it requested, in addition to the valuation of C's Discount Pharmacy, Inc. and the Ciolino Pharmacy, Inc., "all

---

[2]The Court noted that CVS' contract with Ciolino was irrelevant. The Court noted that what was relevant was information that C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. gave to CVS regarding what these companies were worth, that resulted in the sale of these companies to CVS.

documents" related to the sale of the two entities. Therefore, the Court stated that it would deny J.M. Smith's request as it related to any other production request other than the valuation of the above-mentioned two entities arising in connection with their sale to CVS.

Further, the Court indicated that it would be evaluating a proposed Protective Order prior to issuing this ruling to ascertain the "confidentiality" objections raised by Defendants in their response. Subsequent to the ruling, the Court denied the most recent joint motion for a Protective Order, on July 19, 2012. (R. Doc. 136). However, there is no indication that a more satisfactory Protective Order was ever filed into the record after this date. The Court notes that it has awaited a proposed Protective Order from the parties for more than two months, and that, although the parties have appeared before the Court on several occasions, they have given the Court no indication when they anticipate submitting any such Protective Order into Court which would govern what information Defendants must relinquish pursuant to J.M. Smith's request.

The valuation documents used to prepare the sale of C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. shall now be produced no later than fourteen (14) days of the issuance of this Order.

Accordingly,

**IT IS ORDERED** that Plaintiff, J.M. Smith Corporation's, ("J.M. Smith") **J.M. Smith Corporation's Motion to Compel Compliance with Subpoena Duces Tecum (R. Doc. 108)** is **GRANTED IN PART** and **DENIED IN PART**.

It is **GRANTED** to the extent it requests information concerning CVS' valuation of C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc., as reflected in documents that C's Discount Pharmacy, Inc. and Ciolino Pharmacy, Inc. gave to CVS regarding what these companies were

worth, that resulted in the sale of these companies to CVS. The parties shall produce these documents **no later than fourteen (14)** of the issuance of this Order.

It is **DENIED** in all other respects.

New Orleans, Louisiana, this 24th day of October 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**