UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**J.M. SMITH CORPORATION**                          **CIVIL ACTION**


**VERSUS**                                          **NO: 10-1483**


**CIOLINO PHARMACY WHOLESALE**                      **SECTION: "A" (4)**
**DISTRIBUTORS, LLC, ET AL.**

**ORDER**

Before the Court is a **Motion to Compel (R. Doc. 191)**, filed by Plaintiffs-in-Counterclaim, Ciolino Wholesale Pharmacy Distributors, LLC, JJK Wholesale Distributors, LLC, Ciolino Pharmacy, Inc., C's Discount Pharmacy, Inc., and Fast Access Specialty Therapeutics, LLC, (collectively, "Ciolino"), requesting that the Court order Defendant-in-Counterclaim, J.M. Smith Corporation, ("J.M. Smith"), to produce more complete responses to Ciolino's interrogatories and requests for production of documents.  The motion is opposed (R. Doc. 212).  The motion was heard by oral argument on Wednesday, October 10, 2012.

**I.     Factual Background**

On May 17, 2010 Smith filed this breach of contract lawsuit as a result of alleged unpaid balances owed to it by Ciolino.  Smith's complaint alleges that Ciolino, Distributors, maintained

an open account with Smith to acquire certain pharmaceuticals.  (R. Doc. 1, ¶ 4).  Smith alleges that Ciolino, Distributors, owe it $654,336.51 for goods sold and delivered to Ciolino Pharmacy, between November 2009 through December 2009.  (R. Doc. 1, ¶ 4).  Smith also alleges that Defendant, Steven F. Ciolino, the director of Ciolino Pharmacy, personally guaranteed the debt of Ciolino Pharmacy.  (R. Doc. 1, ¶ 5).  As a result, Smith seeks damages and legal interest.  On July 19, 2010, Ciolino filed an answer and counterclaim against Smith, alleging breach of contract and unfair trade practices based on Smith's withdrawal from the New Orleans market and termination of the contract.  (R. Doc. 10, ¶¶ 47, 49, 51, 53, 55).

As to Ciolino's Motion to Compel, Ciolino requests that Smith respond more fully to its interrogatories and requests for production of documents. In opposition, Smith argues that in the year and a half since Ciolino propounded its discovery requests, Smith has produced numerous documents and information.  (R. Doc. 212, p. 1).  Moreover, Ciolino failed to attach Smith's supplemental responses to Ciolino's discovery requests to the instant motion, even though these responses were served on April 23, 2012.  *Id.*  The motion is opposed.  (R. Doc. 212).  The motion is set for oral argument on Wednesday, October 10, 2012.

## II.   **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."   Fed.R.Civ.P. 26(b)(1).   The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.  *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Nevertheless, discovery does have "ultimate and necessary

2

boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947))  Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.  Fed.R.Civ.P. 26(b)(2)(C).  In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.   Fed.R.Civ.P. 26(b)(2)(C)(iii).

### III.   Analysis

In support of their motion, Ciolino argues that they served their interrogatories and requests for production on January 14, 2011.  (R. Doc. 191-3).  Smith responded on February 11, 2012.  Ciolino alleges that the following responses are deficient:

### A.   Interrogatories (R. Doc. 191-5, pp. 1-7)

**1.   Interrogatory No. 8**
For each pharmaceutical product identified to answer to Interrogatory No. 7, please indicate the market allocation share by stating the percentage of the manufacturer's product that was allocated to SDC as of 1 June 2008, 1 June 2009, and 1 June 2010.

**Response:**
Objection: Smith objects to this Interrogatory on the grounds that it seeks information that is neither relevant to any claim or defense in, or the subject

3

matter of, this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

In support of the Motion, Ciolino argues that the allocation of product from manufacturers is relevant to the extent that Smith represented the ability to supply certain quantities of pharmaceutical product to Ciolino, and Ciolino must verify that the supply offer was made in good faith. This is relevant to Ciolino's unfair trade practices and unfair sales claims.  (R. Doc. 191-3, p. 3).

In opposition, Smith argues that in its supplemental request Smith averred that there simply is no such responsive information because Smith made no request to any manufacturer for a change in allocation related to its efforts to enter the New Orleans market.  (R. Doc. 212, p. 2).

At oral argument, the Court stated that better financial records should be provided because the records were illegible.  Further, the Court found that Smith's relevancy argument was overruled because the documents were clearly relevant.  Smith was ordered to produce the records within 7 days of the October 10, 2012 hearing date.

    **2.   Interrogatory No. 9**
Please indicate the amount of credit required by SDC in order to obtain pharmaceutical products delivered to CPWD or any of the Ciolino Entities, and identify the banks and other institutions, including pharmaceutical manufacturers, who granted such credit to SDC.

**Response:**
Objection: Smith objects to this Interrogatory on the grounds that it seeks information that is neither relevant to any claim or defense in, or the subject matter of, this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

In support of the Motion, Ciolino argues that this information is relevant for the same reasons as detailed in Interrogatory No. 8. (R. Doc. 191-3, p. 3).  In opposition, Smith argues that it did not seek a change in its credit limits in connection with its efforts to enter the New Orleans

4

market.  (R. Doc. 212, p. 2).

At oral argument, the parties argued that the request and objections were identical to those posited in connection with Interrogatory No. 8.  The Court again found that Smith's relevancy argument was overruled because the documents were clearly relevant.  Smith was ordered to produce the records within 7 days of the October 10, 2012 hearing date.

**3.  Interrogatory No. 12**
Please identify any and all other corporations, persons, and unincorporated entities, associations, or groups involved in any and all business transactions between CPWD and SDC.

**Response:**
Objection: Smith objects to this Interrogatory on the grounds that it seeks information that is neither relevant to any claim or defense in, or the subject matter of, this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

In support of the Motion, Ciolino argues that the information is relevant to the extent it may lead to fact witnesses, custodians of documents, and other information related to the claims and defenses of the parties.  (R. Doc. 191-3, p. 3).  In opposition, Smith argues that, as stated in its supplemental responses, "there were none."  (R. Doc. 212, p. 2).

At oral argument, the Court found that the interrogatory was far too vague and sustained Smith's objection.

**4.  Interrogatory No. 13**
Please identify an SDC corporate representative under Rule 30(b)(6) for each of the subject matter areas of CPWD accounts; Louisiana operations; contract negotiation and termination of the contract between SDC and CPWD; credit for purchases by SDC to supply CPWD's orders; and SDC's market allocation for each product sold to CPWD.

**Response:**
Objection: Smith objects to this Interrogatory on the grounds that it seeks information that is neither relevant to any claim or defense in, or the subject matter of, this litigation nor reasonably calculated to lead to the discovery of admissible evidence. Subject to the foregoing objection, Smith answers

Interrogatory No. 13 as follows:
1.  CPWD accounts – Anthony Thompson;
2.  Louisiana operations – Michael Robinson;
3.  Contract negotiations and termination of the contract between SDC and CPWD – Michael Robinson;
4.  Credit for purchases by SDC to supply CPWD's order – irrelevant;
5.  SDC's market allocation for each product sold to CPWD – irrelevant.

In support of the Motion, Ciolino argues that this information is relevant "for the reasons laid out."  (R. Doc. 191-3, p. 3).  In opposition, Smith argues that it in fact identified two corporate representatives on three topics; because there were issues regarding credit or allocation, Smith did not need to produce representatives for the Ciolino's last two requests.  (R. Doc. 212, p. 3).

At oral argument, Ciolino stated that the "irrelevant" answers Smith posed in connection with the request for 30(b)(6) experts as to subparts 4 and 5 of Interrogatory No. 13 were unfounded.  Smith reiterated its arguments regarding the lack of allocation and credit problems over the relevant time period.

The Court noted that Ciolino wished to talk to someone regarding market allocation and credit problems, which was a different question than was posed in Interrogatories Nos. 8 and 9.  Therefore, it overruled Smith's objection and ordered it to identify a Rule 30(b)(6) expert as to subparts 4 and 5 of Interrogatory No. 13.

### B.  Request for Production of Documents (R. Doc. 191-5, pp. 8-14)

**1.  Request for Production No. 5**
Copies of any and all documents purporting to show the allocation of pharmaceutical products by manufacturers to SDC, as reflected in answer to Interrogatory No. 8, *supra*.

**Response:**
Objection: See objection to Interrogatory No. 8.

In support of the Motion, Ciolino argues that this information is relevant "as submitted supra."

6

(R. Doc. 191-3, p. 4).  In opposition, Smith argues that it has nothing to produce.  (R. Doc. 212, p. 3).

At oral argument, the Court granted this request for the same reasons as stated in its Order compelling Smith's response to Interrogatory No. 8.   Smith is therefore required to supplement its written response to this request.

      **2.  Request for Production No. 6**
      Copies of any and all balance sheets, income statements, and cash flow statements for SDC for the months of June, July, August, September, October, November, and December 2009.

      **Response:**
      Objection: Smith objects to this Request on the grounds that it seeks information that is neither relevant to any claim or defense in, or the subject matter of, this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

In support of the motion, Ciolino argues that this information is relevant because Smith has alleged that it withdrew from the Southeast Louisiana wholesale market for branded and generic pharmaceuticals because the market was not profitable for Smith.  (R. Doc. 191-3, p. 4). In opposition, Smith argues that in its supplemental response that it would produce financial information regarding this request once Ciolino had signed a specific confidentiality agreement that they had required Smith's counsel to sign in connection with their document production. However, Ciolino did not return the signed confidentiality agreement until September 14, 2012, and Smith produced the requested records on September 26, 2012.  (R. Doc. 212, p. 3).

At oral argument, Ciolino argued that the record produced was not legible.  The Court, after reviewing the question at issue, agreed that it was illegible.  Smith therefore was ordered to supplement its response to Request No. 6 by providing a legible copy of the document in question.

      **3.   Request for Production No. 8**
      Certified copies of any and all policies of insurance that cover the incidents at issue

in this matter and would provide coverage for any judgment awarded against SDC
herein, including excess coverage, that were in effect at the times pertinent hereto.

**Response:**
Objection: Smith carries no insurance against liability of the kind asserted by
defendants.

Ciolino did not specify that it was moving to Compel No. 8 in its motion papers.  (R.

Doc. 191-3, p. 4 (moving from No. 6 to No. 9).  However, at oral argument Ciolino contended

that No. 8 should be produced.  Smith argued that they do not carry such insurance, and the

Court asked Smith's counsel if an explicit inquiry had been made.  Upon answering in the

negative, the Court sustained Smith's objection.

4. **Request for Production No. 9**
Copies of SDC's income tax returns for 2009.

**Response:**
Objection: Smith objects to this Request on the grounds that it seeks
information that is neither relevant to any claim or defense in, or the subject
matter of, this litigation nor reasonably calculated to lead to the discovery of
admissible evidence.

In support of the Motion, Ciolino argues that this information is relevant for the same

reasons as Request for Production No. 6.  (R. Doc. 191-3, p. 4).  In opposition, Smith argues that

it should not be required to produce tax information if the same is available in the financial

statements Smith produced on September 26 after it received Ciolino's signed confidentiality

agreement.  (R. Doc. 212, pp. 3-4).

At oral argument, Ciolino argued that it needed to know about their credit or allocation.

The Court remarked, however, that tax returns would show neither credit nor allocation.

Therefore, it sustained Smith's objection.

5. **Request for Production No. 10**
Copies of any and all employee manuals regarding acquisition of accounts,

8

operations, marketing, account management, client relations, purchases and
sales, contract negotiation, contract termination, and debt collection that were
in force for SDC employees in 2009.

**Response:**
???

In support of the Motion, Ciolino argues Smith's response indicates that it did not
comprehend the request; Ciolino argues that this shows that Smith failed to either produce a
meaningful response or object thereto.  (R. Doc. 191-3, p. 4).  In opposition, Smith argues that it
had inadvertently submitted a "draft" response to these interrogatories, although it later advised
in its supplemental response that it has no employee manuals of the type described in this
request.  (R. Doc. 212, p. 4).

At oral argument, Ciolino argued that this was relevant because Smith argued that Gray
was a "rogue agent," and therefore the training manuals were germane to this inquiry.  Smith
argued that it had no such manuals.  The Court ordered Smith to supplement its response to
reflect the absence of such information within 7 days of the October 10, 2012 hearing date.

6.  **Request for Production No. 11**
Copies of any and all written management policies regarding acquisition of
accounts, operations, marketing, account management, client relations,
purchases and sales, contract negotiation, contract termination, and debt
collection that were in force for SDC management in 2009.

**Response:**
???

In support of the Motion, Ciolino argues Smith's response indicates that it did not
comprehend the request; Ciolino argues that this shows that Smith failed to either produce a
meaningful response or object thereto.  (R. Doc. 191-3, pp. 4-5).  In opposition, Smith argues
that it had inadvertently submitted a "draft" response to these interrogatories, although it later
advised in its supplemental response that it has no employee manuals of the type described in

9

this request.  (R. Doc. 212, p. 4).

At oral argument, Ciolino voiced the same argument as it had for No. 10.  The Court ordered Smith to supplement its response within 7 days of the October 10, 2012 hearing date.

>  **7.  Request for Production No. 19**
>  For any and all SDC accounts of CPWD or the other Ciolino Entities involved in this matter, including but not limited to SDC accounts # 5948, 5965, and 5973, copies of any and all:
>  - invoices,
>  - statements of account,
>  - credit memoranda,
>  - delivery manifests,
>  - quotations (of, e.g., COG, WAC, or price),
>  - order confirmation notices,
>  - purchase orders,
>  - pick tickets,
>  - detailed billing for any "legal fees" claimed by SDC,
>  - detailed billing for any "bank charges" claimed by SDC,
>  - detailed billing for any "interest" claimed by SDC, and
>  - account draft payments.
>
>  **Response:**
>  All such documents have been or will be produced.

In support of the Motion, Ciolino argues that thus far Smith has not provided detailed billing records in support of the invoice line items related to "legal fees."  (R. Doc. 191-3, p. 5). Ciolino argues that it is entitled to review this information because it is entitled to recover fees on a successful open account claim.  *Id.*  Ciolino contends that reviewing the billing invoices will allow it to assess the reasonableness of the legal fees asserted in the open account claim, as well as separate legal fees assessed for prosecution of Smith Drug's open account claim for legal fees assessed by Smith against Ciolino's counterclaims.  *Id.*

In opposition, Smith argues that it will produce such information once it actually seeks an award of those fees when it seeks an award of those fees in connection with its claim on open

account.  (R. Doc. 212, p. 4).

At oral argument, the parties reiterated their arguments, and the Court ordered production

of the documents within 7 days of the October 10, 2012 hearing date.

**8.  Request for Production No. 20**
Copies of any and all documents sent to EPIC regarding CPWD or the other
Ciolino Entities involved in this matter.

**Response:**
???

Ciolino did not provide any argument regarding Smith's response to this Request, beyond

listing Smith's answer.  In opposition, Smith argues that EPIC does not contract with wholesalers

like CPWD, no such documents exist, and Smith stated that it had no responsive documents in its

supplemental request.  (R. Doc. 212, p. 5).

At oral argument, the Court noted that because Smith had made an argument regarding

No. 20 in its opposition, its actual response of "???" was insufficient.  The Court ordered Smith

to supplement its response within 7 days of the October 10, 2012 hearing date.

**9.  Request for Production No. 21**
Copies of any and all written contracts with any and all SDC customers or
clients related to the sale of pharmaceuticals, branded or generic, in the State
of Louisiana currently in force or in force during the times pertinent hereto.

**Response:**
Objection: There are no such written contracts, other than invoices and
shipping documents to the production Smith objects on the grounds that such
documents are neither relevant to any claim or defense in, or the subject
matter of, this litigation nor reasonably calculated to leave to the discovery of
admissible evidence.

In support of the Motion, Ciolino argues Smith's response indicates that it did not

comprehend the request; Ciolino argues that this shows that Smith failed to either produce a

meaningful response or object thereto.  (R. Doc. 191-3, pp. 5-6).  In opposition, Smith argues

that it Ciolino did not repeat its request in its motion to compel.  (R. Doc. 212, p. 5).

At oral argument, the Court observed that based on the fact that Smith argued it had "pulled out" of Louisiana due to a presence of a rogue agent, the information requested would be relevant.  The Court ordered production of any records responsive to this request for any and all pharmacies in Louisiana between December 20, 2009, and December 20, 2010.  The Court ordered Smith to supplement its response within 7 days of the October 10, 2012 hearing date.

### 10. Request for Production No. 23

Copies of any and all citations or notices from the Louisiana Board of Wholesale Drug Distributors, the Louisiana Board of Pharmacy, or any other regulatory agency overseeing the sale or distribution of pharmaceuticals in the State of Louisiana, as well as any of SDC's filings with same.

**Response:**
???

In support of the Motion, Ciolino argues that although Smith has delivered some documents responsive to this request, Smith's response indicates that it did not comprehend the request; Ciolino argues that this shows that Smith failed to either produce a meaningful response or object thereto.  (R. Doc. 191-3, p. 6).  In opposition, Smith argues that on April 23, 2012, it produced copies of its licenses in Louisiana.  (R. Doc. 212, p. 5).

At oral argument, the Court noted that Smith's response of "???" was insufficient.  The Court ordered Smith to supplement its response within 7 days of the October 10, 2012 hearing date.

### 11. Request for Production No. 24

Copies of the complete business portfolio of Mr. Quentin Bostian or any other agent of SDC responsible for sales in the State of Louisiana at the times pertinent hereto through the present.

**Response:**

Objection: Smith objects to this Request on the grounds that it seeks information that is neither relevant to any claim or defense in, or the subject matter of, this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

In support of the Motion, Ciolino argues that the information is relevant because it uses written agreements, agreements for terms of years, and other contractual practices, and that it has asserted a lack of profitability as one reason for its withdrawal from the Louisiana market. (R. Doc. 191-3, p. 6). In opposition, Smith argues to the extent that it remains relevant, Smith produced on September 26, 2012, customer lists for three sales representatives with customers in north and central Louisiana during the relevant time period. (R. Doc. 212, p. 5).

At oral argument, Ciolino stated that Smith had supplemented responses to its satisfaction, therefore rendering this request irrelevant.

## IV.   **Conclusion**

Accordingly,

**IT IS ORDERED** that Plaintiffs-in-Counterclaim, Ciolino Wholesale Pharmacy Distributors, LLC, JJK Wholesale Distributors, LLC, Ciolino Pharmacy, Inc., C's Discount Pharmacy, Inc., and Fast Access Specialty Therapeutics, LLC's, (collectively, "Ciolino"), **Motion to Compel (R. Doc. 191)** is **GRANTED IN PART** and **DENIED IN PART**.

It is **GRANTED** as to Ciolino's Interrogatories Nos. 8 and 9, and as to Ciolino's Requests for Production Nos. 5, 6, 10, 11, 19, 20, 21, and 23. Smith is ordered to supplement its responses to the same within seven (7) days of the October 10, 2012 hearing date, as stated at oral argument.

It is **GRANTED** as to Ciolino's Interrogatory No. 13, subparts 4 and 5. Smith is ordered to identify a 30(b)(6) expert for these subparts within seven (7) days of the October 10, 2012 hearing date, as stated at oral argument.

It is **DENIED** as to Ciolino's Interrogatory No. 12, and as to Ciolino's Request for Production Nos. 8, 9.

It is **DENIED AS MOOT** as to Ciolino's Request for Production No. 24.

New Orleans, Louisiana, this 24th day of October, 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**