UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **J.M. SMITH CORPORATION** | **CIVIL ACTION** |
| **VERSUS** | **NO: 10-1483** |
| **CIOLINO PHARMACY WHOLESALE DISTRIBUTORS, LLC, ET AL.** | **SECTION: "A" (4)** |

## ORDER

Before the Court is **Smith Corporation's Motion to Compel Discovery (R. Doc. 205)**, filed by Plaintiff, J.M. Smith Corporation, ("Smith") seeking an order from this Court requiring Defendants, Ciolino Wholesale Pharmacy Distributors, LLC, JJK Wholesale Distributors, LLC, Ciolino Pharmacy, Inc., C's Discount Pharmacy, Inc., and Fast Access Specialty Therapeutics, LLC, (collectively, "Defendants") to produce requested documents and schedule the requested deposition. The motion is opposed (R. Doc. 211).[1] The motion is set for oral argument on Wednesday, October 10, 2012.

### I. Factual Background

On May 17, 2010 Smith filed this breach of contract lawsuit as a result of alleged unpaid balances owed to it by Defendants. Smith's complaint alleges that Defendants, Distributors,

---

[1] On October 9, 2010, Smith filed two exparte motions for leave to file a reply to Defendants' opposition, as well as to substitute exhibits attached to the instant Motion. (R. Docs. 218, 219). The Court granted both motions. (R. Docs. 224, 225). At oral argument, counsel for Defendants requested permission to file an opposition to R. Docs. 218, 219. The Court orally granted this request. As of the date of filing, however, no opposition has yet been filed by Defendants.

maintained an open account with Smith to acquire certain pharmaceuticals. (R. Doc. 1, ¶ 4). Smith alleges that Defendants, Distributors, owe it $654,336.51 for goods sold and delivered to Ciolino Pharmacy between November 2009 through December 2009. (R. Doc. 1, ¶ 4). Smith also alleges that Defendant, Stephen F. Ciolino ("Stephen Ciolino"), the director of Ciolino Pharmacy, personally guaranteed the debt of Ciolino Pharmacy. (R. Doc. 1, ¶ 5). As a result, Smith seeks damages and legal interest.

On July 19, 2010, Defendant filed an answer and counterclaim against Smith, alleging breach of contract and unfair trade practices based on Smith's withdrawal from the New Orleans market and termination of the contract. (R. Doc. 10, ¶¶ 47, 49, 51, 53, 55).

As to Smith's Motion to Compel, Smith requests an email from counsel which was disclosed during a settlement conference, a revised expert report as detailed during an August 1, 2012 hearing, prime vendor agreements between McKesson and Ciolino Pharmacy Wholesale Distributors, LLC ("CPWD"), and deposition dates for Defendants' expert, J.C. Tuthill, to examine her about a second expert report she issued after her first deposition. (R. Doc. 205-1, p. 2).

In opposition, Defendants argue, among specific objections, that Smith's motion must be denied because Smith did not pursue a Rule 37 conference prior to his filing of the motion. (R. Doc. 211, p. 2). The motion is opposed. (R. Doc. 211). The motion is set to be heard by oral argument on Wednesday, October 10, 2012.

## II. **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Id.* The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery

2

appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are afforded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 177 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . ." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

### III. <u>Analysis</u>

#### A. <u>Rule 37 Conference</u>

According to Federal Rule of Civil Procedure ("Rule") 37, a party who seeks to bring a Motion to Compel must first attempt in good faith to obtain and participate in a settlement conference. Smith has attached to his motion a Rule 37 certificate, which states that "counsel for Plaintiff and counsel of for [sic] Ciolino have spoken by telephone on more than one occasion

3

concerning the subjects of this motion in an attempt to amicably resolve the issues addressed by the motion, but no resolution has been reached." (R. Doc. 205-4, p. 1).

In opposition Defendants argue, among specific objections, that Smith's motion must be denied because Smith did not pursue a Rule 37 conference prior to his filing of the motion. (R. Doc. 211, p. 2). They argue that although Smith and Defendants participated in a Rule 37 conference in connection with another of Smith's Motions – i.e., a motion for entry onto land (R. Doc. 187) – this should not qualify as a Rule 37 conference in the instant matter because Defendants, not Smith, noticed that conference. (R. Doc. 211, p. 2). Therefore, Defendants argue that the motion should be dismissed on procedural grounds.

The Court finds that the plain language of Rule 37 states only that the movant "has in good faith conferred or attempted to confer." Rule 37(a)(1); (R. Doc. 226, p. 2). The Rule says nothing about whether such a conference must take place separate from any other Rule 37 conferences, or whether the movant must in fact be the party who institutes the conference. Defendants' objections are denied.

      **B.**      **Email from Counsel During Settlement Conference**

Smith argues that during a March 6, 2012 settlement conference, Steven Ciolino showed an email on his iPhone to the undersigned Magistrate Judge and Smith's counsel that purportedly contained information regarding price lists and an alleged contractual agreement between Smith and Defendants. (R. Doc. 205-1, pp. 1-2). Smith also attaches a letter, dated August 1, 2012, from Smith's counsel to CPWD's counsel reiterating this position. (R. Doc. 205-2, p. 1).

In opposition, Defendants argue that even though Smith's counsel had the opportunity to inspect the emails from Ciolino during the March 6, 2012 settlement conference, the issue is now

moot because they have already produced "an email and attachment" from Smith purportedly responsive to Smith's request. (R. Doc. 211, p. 2). Defendants argue that this moots Smith's objection. *Id.* They have attached the text of the email to this Motion, along with a letter dated October 1, 2012, which specifies that the emails are attached. (R. Docs. 211-1). The emails attached to the document do not contain any attachments.

At oral argument, Smith argued that although it had been given a "string" of emails with the Ciolino email included, the attachment that he had been provided did not match that on the original. Specifically, Smith presented the Court with two different spreadsheets purportedly attached to the email string at different times, which it argued contained dissimilar "invoice" columns. In opposition, Defendants argued that Smith had the opportunity to inspect the emails at a settlement conference, and further that Defendants had in fact produced the email to Smith.

The Court inspected the two spreadsheets in Smith's possession and concluded that they were in fact dissimilar. Consequently, the Court ordered Ciolino's original email, along with any attachments it contained, to be produced by Ciolino to Smith.

**C.     Prime Vendor Agreements Between McKesson and CPWD**

In support of its Motion, Smith argues that McKesson has acknowledged the existence of "prime vendor agreements" in a sworn statement. (R. Doc. 205-1, p. 2). Although Smith's August 1, 2012 letter requested these documents, they have not been provided. (R. Doc. 205-2, p. 1).

In opposition, Defendants argue that the emails have already been produced, and Smith's argument is apparently that there must be some "hidden" prime vendor agreement documents because McKesson provided an affidavit, supposedly testifying that CWPD and Fast Access Specialty Therapeutics, LLC ("FAST") had prime vendor agreements with McKesson ("McKesson

5

Affidavit") (R. Doc. 211, p. 3). Defendants argue that there is no vendor agreement, and to the extent that prior information in the record suggests the contrary, such information is irrelevant because it arises in 2009. *Id.* Defendants further argue that the McKesson Affidavit does not attest that CPWD and FAST had separate prime vendor agreements in 2009. *Id.* Defendants further argue that to the extent that Smith believes that such documents do exist, Smith should seek them from McKesson. *Id.* at pp. 3-4.

At oral argument, Smith reiterated the positions asserted in its briefs. Defendants argued that the presence of an agreement with McKesson did not invalidate their damages claim as to Smith, because it was customary in the pharmaceutical industry to have a "primary" supplier and a "secondary" supplier. At oral argument, the Court indicated that it would stay consideration of this issue until the parties provided the supply agreement and appeared before the Court the following Wednesday, October 17, 2012. Smith then asserted that it had a copy of a 2007 "supply agreement" between C's Discount Pharmacy and McKesson, the language of which, according to Smith, suggested that not all of the Ciolino entities were included.

The Court ordered Defendants to produce the Agreement for *in camera* inspection to determine whether the language of the Agreement suggested the presence or absence of any additional agreements between McKesson and any of the Ciolino entities, specifically FAST. The Court further ordered the parties to appear on Wednesday, October 17, 2012 for a subsequent hearing on the merits of the Supply Agreement. Prior to the hearing, Smith produced the Agreement to the Court, which it inspected.

At oral argument on October 17, the parties argued the motion. The Court found, based on the language of the Agreement and the arguments of the parties, that the Agreement specified the

6

legal Ciolino entity who would be receiving products. In this instance, the Agreement submitted for *in camera* review was between McKesson and C's Discount Pharmacy, Inc. This suggested that other "supply agreements" could exist between McKesson and the other Ciolino entities. However, Smith stated that it did not know whether McKesson supplied all of the drugs to the Ciolino entities, and therefore the Court could not grant its request as to supply agreements between those other Ciolino entities which existed at the time which the 2007 Supply Agreement was formed. Further, Smith indicated during the October 17, 2012 oral argument that it was specifically seeking any agreement from FAST. Accordingly, Smith's request as to production of an agreement as to CPWD is denied.

However, and also based on this interpretation, the Court further found that the 2007 Supply Agreement did not expressly cover FAST, because FAST came into existence in 2009, after the 2007 Supply Agreement was formed. Counsel for Defendants stated that no separate agreement existed between McKesson and FAST. The Court Ordered Defendants to formally amend their discovery responses to specifically attest that no separate agreement existed between McKesson and FAST. The Court further ordered Defendants to include along with their amended responses a verification from Steven Ciolino, the owner of FAST, that no separate agreement existed between McKesson and FAST.[2]

---

[2]Defendants also argued, at the October 17, 2012 hearing, that they had submitted a supplemental memorandum, wherein they directed the Court to testimony from Steven Ciolino which supported the positions taken at oral argument. (R. Doc. 233). In their submission, filed on the date of the hearing, Defendants include excerpts from Steven Ciolino's deposition. This testimony does not indicate that the 2007 Supply Agreement in question here was specifically drafted to cover entities not in existence at the time the Agreement was entered into. Therefore, the Court finds it unpersuasive.

### D. Revised Expert Report as Discussed During August 1, 2012 Hearing

In support of its Motion, Smith argues that during an August 1, 2012 discovery hearing, Defendants' counsel mentioned that it would provide a revised report from Defendants' expert, Jacqueline Tuthill. (R. Doc. 205-1, p. 2). Smith requested the same document via letter later that day, but has not received it. (R. Doc. 205-2, p.1).[3]

In opposition, Defendants indicate that Tuthill has produced an updated expert report, but that it contains "no new opinions or new conclusions, but simply updates the calculations already made with actual numbers instead of projected numbers, and includes some points specifically to rebut the criticisms issued by Smith's Drug's expert, Mr. Panzeca." (R. Doc. 211, p. 4). Defendants do not indicate that they have produced this report to Smith.

At oral argument, the parties reiterated their positions. The Court ordered the production of both expert reports for *in camera* inspection, so as to determine whether the changes to the expert report were significant enough to warrant a re-deposition, and ordered the parties to come before the Court on October 17, 2012, to argue the issue.

Upon *in camera* review and comparison of the two reports, the Court found that there were in fact significant differences between the two reports, and that Smith was entitled to re-depose Tuthill on the new evidence and conclusions that are contained in the updated expert report. At oral argument on October 17, 2012, the Court ordered a redeposition of Tuthill on the new information contained in her revised expert report: specifically, (1) any modifications to her opinion, (2) the reasons why the modifications occurred, and (3) the additional information she considered in reaching the decision that her opinion should be modified.

---

[3]Both expert reports were produced by Legier & Company. The initial Expert Report was produced on October 14, 2011. The second expert report was produced on February 2, 2012.

### E. Deposition Dates from Defendants' Expert

In support of its Motion, Smith argues that it has long been requesting dates for the second deposition of Tuthill, but Defendants' counsel has been unresponsive. (R. Doc. 205-1, p. 2). In opposition, Defendants argue that Smith is not entitled to re-take Tuthill's deposition because, as noted above, the alterations to her first expert report were minimal. (R. Doc. 211, p. 4). Moreover, Smith has failed to suggest any dates, attempt to notice the deposition, of caused a subpoena to issue for attendance at said deposition. *Id.* at 4-5.

The issue was not addressed at oral argument at either the October 10, 2012 or October 17, 2012 hearing. However, because Defendants' objections to the taking of Tuthill's deposition hinged on their theory that Smith was not entitled to re-take the deposition, their objection is now overruled based on the Court's ruling. Defendants are ordered to produce Tuthill for deposition post haste.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Plaintiff, J.M. Smith Corporation d/b/a Smith Drug Company's, ("Smith") **Smith Corporation's Motion to Compel Discovery (R. Doc. 205)** is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART**.

It is **GRANTED** as to production of Ciolino's email, as specified in this Order. Defendants, Ciolino Wholesale Pharmacy Distributors, LLC, JJK Wholesale Distributors, LLC, Ciolino Pharmacy, Inc., C's Discount Pharmacy, Inc., and Fast Access Specialty Therapeutics, LLC's, (collectively, "Defendants") shall produce the original email, with attachments, within fourteen (14) days of the issuance of this Order.

It is **GRANTED** as to production of an additional "Prime Vendor Agreement" covering Fast Access Specialty Therapeutics ("FAST"), as set forth in this Order. Defendants shall produce any such agreements, or else amend their discovery responses and include a verification, within seven (7) days of the October 17, 2012 hearing date, as specified at oral argument.

It is **DENIED** as to production of an additional "Prime Vendor Agreement" covering Ciolino Wholesale Pharmacy Distributors ("CPWD").

It is **GRANTED** as to re-deposition of Defendants' expert, Jacqueline Tuthill ("Tuthill"), as set forth in this Order.

It is **DENIED AS MOOT** as to the provision of deposition dates for Tuthill's re-deposition.

New Orleans, Louisiana, this 24th day of October 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**