UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| J. M. SMITH CORPORATION d/b/a<br>SMITH DRUG COMPANY | CIVIL ACTION |
| VERSUS | NO: 10-1483<br>c/w 10-1786<br>Ref: Both |
| CIOLINO PHARMACY WHOLESALE<br>DISTRIBUTORS, LLC et al. | SECTION: "A" (4) |

## ORDER AND REASONS

Before the Court is a **Motion for Partial Summary Judgment (Rec. Doc. 144)** filed by Defendant-in-counterclaim, J. M. Smith Corporation d/b/a Smith Drug Company ("Smith"). Plaintiffs-in-counterclaim, Ciolino Pharmacy Wholesale Distributors, LLC ("CPWD"), JJK Wholesale Distributors, LLC ("JJK"), Ciolino Pharmacy, Inc. ("C's 1"), C's Discount Pharmacy, Inc. ("C's 2"), and Fast Access Specialty Therapeutics, LLC ("FAST") (collectively herinafter "the Ciolino Entities"), oppose the motion. The motion, set for hearing on September 12, 2012, is before the Court on the briefs without oral argument.[1] For the reasons that follow, the motion is **DENIED**.

## I. BACKGROUND

The original lawsuit filed by Smith, a pharmaceutical wholesaler, concerns unpaid balances owed on an open account. CPWD maintained an open account with Smith to acquire certain pharmaceuticals. (Compl ¶ 4.). According to Smith, CPWD failed to make payments for goods sold and delivered between November 2009 and December 2009. (*Id.*). As a result, Smith filed suit

---

[1]Smith has filed a request for oral argument but the Court is not persuaded that oral argument would be helpful.

1

against CPWD on May 17, 2010, claiming that it is owed $654,336.51 and legal interest. (*See id.*). On July 19, 2010, the Ciolino Entities filed an Answer and Counterclaim against Smith, alleging breach of contract and unfair trade practices based on Smith's withdrawal from the New Orleans market and termination of the contract. (*See* Countercl.).

Smith filed the instant motion for partial summary judgment, arguing that it is entitled to dismissal of the claim brought by the Ciolino Entities under the Louisiana Unfair Sales Act. For the following reasons, the motion is denied.

A four-day jury trial is set for Tuesday, February 19, 2013, at 8:30 a.m.

## II. STANDARD OF REVIEW

Summary Judgment is appropriate only if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

## III. DISCUSSION

2

Smith seeks partial summary judgment on the Ciolino Entities' claim under the Louisiana Unfair Sales Act ("LUSA"), arguing that this claim fails as a matter of law because: "(1) the Ciolino Entities have no evidence Smith priced its products below average variable cost; (2) Smith did not have a reasonable chance of recoupment; (3) Smith lacks sufficient market share to engage in predatory pricing; and (4) the Ciolino Entities sustained no damages even if a violation did occur." (Rec. Doc. 144-1 at p. 1). The Court finds that these are issues to be determined by the trier of fact.

Under the LSUA:

> Any advertising, offer to sell, or sale of any merchandise, either by retailers or wholesalers, at less than *cost* as defined by this Sub-part plus any state, county or municipal sales tax that is then payable under any existing law or ordinance, with the intent or effect of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or impairing fair competition and thus injuring public welfare, is unfair competition and contrary to and violative of public policy as expressed in this Sub-part, where the result of such advertising, offer or sale is to tend to deceive any purchaser or prospective purchaser, or to substantially lessen competition, or to unreasonably restrain trade, or to tend to create monopoly in any line of commerce.

La. R.S. § 51.422(A) (emphasis added). The LUSA defines "[c]ost to the wholesaler" as "the invoice cost or the replacement cost, of the merchandise, whichever is lower; (1) [l]ess all trade discounts except customary discounts for cash and discounts from the state or any governmental agency allowed for the payment of collection of any taxes. ..." La. R.S. § 51:421(G).

Smith contends that, "the Ciolino Entities have no evidence Smith sold below its invoice cost or replacement cost, less discounts..." and accordingly cannot maintain their claim under the LUSA. (Rec. Doc. 144-1 at 6). The Ciolino Entities counter that Smith violated the LUSA by selling pharmaceuticals to them at prices below the wholesaler acquisition cost ("WAC"). The Ciolino Entities cite to the deposition of Michael D. Robinson, Smith's regional manager, taken on Friday, February 18, 2011, wherein a sales loss is mentioned; and to emails between Mr. Robinson and Russell Gray, Smith's territorial account manager, wherein offers to sell at certain rates below the

3

WAC were discussed. The Ciolino Entities attempt to bolster their claim that Smith sold to them at prices below cost, by citing to the declaration of Rick Simerly, a vice president at Smith, wherein Mr. Simerly states that, "[w]holesalers *generally* do not sell product to the retail customer for the *same* price they paid the manufacturer." (Rec. Doc. 79-1 at 2) (emphasis added). The Ciolino Entities pull from this statement the proposition that, "if wholesalers *generally* sell at prices higher than their cost, wholesalers [such as Smith,] *sometimes* sell at prices lower than their cost from the manufacturer." (Rec. Doc. 168 at 6) (emphasis added). In furtherance of this proposition, the Ciolino Entities cite the declaration of Bill Brice, another vice president at Smith, wherein Mr. Brice states, "[i]n all cases, Smith seeks to be profitable when selling pharmaceutical products to its customers, and *in most cases* Smith sells to its customers at prices that exceed Smith's ultimate net acquisition cost for the product." (Rec. Doc. 144-2 at 8) (emphasis added). Rebutting this argument, Smith asserts that "the Ciolino Entities have no evidence that WAC, or wholesale acquisition cost, is what Smith actually paid for the pharmaceutical products '[l]ess all trade discounts[.]'" (Rec. Doc. 144-1 at 6) (citing La. R.S. § 51:421(G)). While it is not clear that the deductive reasoning employed by the Ciolino Entities will prove persuasive to a finder of fact, it is clear that summary judgment is inappropriate on this issue. Smith fails to meet its burden of demonstrating that there is no genuine issue as to any material fact with regard to whether Smith sold below cost in violation of the LUSA.

Smith next argues that if it did sell below cost, because it did not have a reasonable chance of recoupment, its sales were not predatory and therefore not in violation of the LUSA. Smith contends that the LUSA is an antitrust law designed to protect competition and accordingly that the Ciolino Entities, "'must demonstrate that the scheme could actually drive the competitor out of the market' and 'there must be evidence that the surviving monopolist[Smith,] could then raise prices to consumers long enough to recoup his costs without drawing new entrants to the market' ...." (Rec.

4

Doc. 144-1 at p. 8) (citing *Stearns Airport Equipment Co.,* 170 F.3d at 528-9). The Ciolino Entities counter that "the burden of proof under the LUSA is specifically enumerated by R.S. 51:422(A)," and "§ 422(A) lists the essential elements of a LUSA violation, and that proof of offers or sales below cost is a *prima facie* showing of a violation." (Rec. Doc. 168 at 8 - 9). The Ciolino Entities further argue that, "[o]therwise, Smith Drug here seeks analysis of this case under inapplicable law. Even were the law cited in the memorandum in support applicable, Smith Drug has not borne its burden of showing an absence of an [sic] genuine issue of material fact." (Rec. Doc. 168 at 9). The Court agrees. Assuming, *arguendo*, that proof of a reasonable chance of recoupment is an essential element of the Ciolino Entities' claim under the LUSA[2], there are still disputed issues of fact, e.g., whether a reasonable chance of recoupment existed, if and when the alleged under-cost sales occurred, which preclude the granting of this motion for partial summary judgment.

As to the remaining issues purported by Smith to be essential elements of the Ciolino Entities' claim under the LUSA, i.e., that "(3) Smith lacks sufficient market share to engage in predatory pricing; and (4) the Ciolino Entities sustained no damages even if a violation did occur[,]" the Court concludes that there are sufficient facts in dispute which preclude it from granting

---

[2]The Court notes that *American Building Products, L.L.C. v. Ashley Aluminum, Inc.* No. 97-2976, 1997 WL 610877 *1 (E.D. La. Oct. 1, 1997), cited by Smith for the proposition that "this Court has previously found that a claim under LUSA 51:422 is a predatory pricing scheme" claim, and thereby an antitrust claim, is not so clear-cut. (Rec. Doc. 184 at 2). As the Ciolino Entities correctly point out, "Smith Drug has ...taken argument of counsel, as reported by the Court, and turned it into an essential element of the claim." (Rec. Doc. 198 at 3). While no other case cited by the parties, nor found by the Court, establishes that all claims under the LUSA are *per se* antitrust claims, the Court finds that La. R.S. § 51: 421 *et seq.* does contemplate predatory pricing scheme claims, which are themselves *per se* antitrust claims (see *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 595 (1986)) which the Louisiana Supreme Court has looked to federal law for guidance in the past. (See *Tuban Petroleum, L.L.C. v. Sirac, Inc.,* 11 So.3d 519, 523 (La. App. 4 Cir. 2009)) (citing *Louisiana Power & Light Co. V. United Gas Pipe Line Co.,* 493 So.2d 1149, 1151 (La. 1986)). That said, ultimately it is the role of the finder of fact to determine whether first, there was a sale under cost, and then second, if so, whether this under-cost sale was part of a predatory pricing scheme. Only after such a finding will the defenses asserted by Smith need to be addressed.

5

summary judgment. (Rec. Doc. 144-1 at p. 1). Perhaps most importantly, as detailed in footnote 2 *supra*, the issue of whether these are essential elements to the Ciolino Entities' claim under the LUSA is itself in dispute. After a careful analysis of Louisiana law, the Court has found that these are not essential elements for every claim arising under the LUSA. While these elements will likely prove important should the finder of fact determine that there was a predatory pricing scheme in place, these issues are not properly before the Court at this time.

Based on a review of the evidence presented, the Court concludes that disputed issues of fact regarding Smith's alleged violation of LUSA preclude the granting of this motion for partial summary judgment. The jury will determine at trial whether the Ciolino Entities have a valid claim against Smith under LUSA.

## IV. CONCLUSION

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Partial Summary Judgment (Rec. Doc. 144)** filed by Defendant-in-counterclaim, J. M. Smith Corporation d/b/a Smith Drug Company, is **DENIED**.

This 29th day of October 2012.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE