UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| J.M. SMITH CORPORATION | CIVIL ACTION |
| VERSUS | NO: 10-1483 |
| CIOLINO PHARMACY WHOLESALE DISTRIBUTORS, LLC, ET AL. | SECTION: "A" (4) |

**ORDER**

Before the Court is a **Motion to Intervene for the Limited Purpose of Moving for Entry of Protective Order (R. Doc. 292)**, filed by non-party, McKesson Corporation, ("McKesson") seeking leave of the Court to intervene so it may file a Protective Order in this case. The motion is opposed by Defendant-in-Counterclaim, JM Smith Corporation d/b/a Smith Drug Company, ("Smith") (R. Doc. 297), and McKesson has filed a Reply (R. Doc. 302).[1] The motion was heard by oral argument on January 23, 2013; during the hearing, Plaintiffs-in-Counterclaim, Ciolino Pharmacy Wholesale Distributors, LLC, C's Pharmacy No. 1, C's Pharmacy No. 2, JJK Wholesale Distributors, LLC, and Fast Access Speciality Therapeutics, LLC's, ("Ciolino") also participated.[2]

**I.     Factual Background**

On May 17, 2010 Smith filed this breach of contract lawsuit as a result of alleged unpaid balances owed to it by Ciolino. Smith's complaint alleges that Ciolino maintained an open account with Smith to acquire certain pharmaceuticals. (R. Doc. 1, ¶ 4). Smith alleges that Ciolino owes it $654,336.51 for goods sold and delivered to Ciolino Pharmacy between November 2009 through December 2009. (R. Doc. 1, ¶ 4). Smith also alleges that Defendant, Steven F. Ciolino, the director

---

[1] In its Motion, McKesson states that Plaintiffs-in-Counterclaim, Ciolino Wholesale Pharmacy Distributors, LLC, JJK Wholesale Distributors, LLC, Ciolino Pharmacy, Inc., C's Discount Pharmacy, Inc., and Fast Access Specialty Therapeutics, LLC, (collectively, "Ciolino") do not oppose the motion. (R. Doc. 292, p. 5).
[2] The Court will refer to "Ciolino" in the singular in this Order.

of Ciolino Pharmacy, personally guaranteed the debt of Ciolino Pharmacy. (R. Doc. 1, ¶ 5). As a result, Smith seeks damages and legal interest.

On July 19, 2010, Ciolino filed an answer and counterclaim against Smith, alleging breach of contract and unfair trade practices based on Smith's withdrawal from the New Orleans market and termination of the contract. (R. Doc. 10, ¶¶ 47, 49, 51, 53, 55). Ciolino then contracted with McKesson to cover its supply obligations.

In Summer 2012, Smith filed certain confidential McKesson documents into the record in this case; McKesson then successfully intervened for the limited purpose of sealing the exhibits containing these documents. (R. Docs. 160, 162). On December 24, 2012, Ciolino informed McKesson that it had produced documents containing McKesson's "confidential, proprietary information" in the course of discovery to Smith. (R. Doc. 292, p. 3).

The instant motion seeks the entry of a Protective Order prior to trial. McKesson also requests the opportunity to "participate in a status or pretrial conference for the limited purpose of discussing how McKesson's confidential documents will be handled at trial." *Id.* at 4.[3] The motion is opposed.

## II.   **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 24(b) governs permissive intervention and provides that "[u]pon timely application[,] anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." *Id.* A court possesses the discretion to determine whether to permit permissive intervention and must "consider whether the intervention will unduly delay or prejudice the original parties' rights. *Id.* In exercising its discretion to grant or deny permissive intervention, a court must consider: 1) whether an intervenor is adequately represented by other parties; and 2) whether intervention is likely to contribute significantly to the development of the underlying factual issues. *League of United Latin American Cities, Council NO. 4434 v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989).

---

[3] The Court obviously has no authority to allow McKesson to participate in a status or pretrial conference before the U.S. District Court Judge, and these requests will not be evaluated further in the course of this Bench Memorandum.

"Intervention through Rule 24 is the procedurally correct course for nonparties to seek to challenge or modify protective orders." *Weiss v. Allstate Insurance Co.*, No. 06-3774, 2007 WL 2377116, at *2 (E.D. La. Aug. 16, 2007) (Vance, J.) (finding that third party public interest group could intervene to challenge protective order requiring destruction of documents used at trial).[4] "There is no Article III requirement that intervenors have standing in a pending case." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006). However, "[t]he intervention rule . . . is not intended to allow the creation of whole new lawsuits by the intervenors." *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 525 (5th Cir. 1994) (finding intervention unavailable where "the only purpose of the attempted intervention was to gain access to documents and testimony that are subject to [a] protective order.").[5]

### III. Analysis

#### A. Intervention vs. Compromise

In support of its argument, McKesson attaches a series of emails which indicate that Smith is willing to relinquish the documents at McKesson's expense. (R. Doc. 292-2). Specifically, Smith states in a January 7, 2013 email that "[i]f your client wants to cover the legal fees for us [identifying each document that may contain McKesson information] fine. Otherwise I suggest that you take it up with the Ciolino Entities who breached the agreement with your client to keep such information confidential. It is not Smith's fault your client's customers breached their agreement with your client." (R Doc. 292-2, p. 5). Smith's counsel then proposed a concrete course of action to protect the proprietary information, as shown in this January 7, 2013 email which it sent to McKesson:

> We, of course, are reserving the right to use any document identified on our exhibit list, which I previously sent to you, or any document identified on our next list, which is due in a couple of weeks. If you would like to pay for a copy of the documents let me know, and I will have our support staff start working on a copy. Your client should then be able to identify their own documents and then you will know which ones we plan to use at trial, and that will take case of the additional

---

[4] Other Fifth Circuit courts have noted that a right to intervene for the purpose of preventing disclosure of documents exists for third parties in a *criminal* proceeding. *United States v. Crawford Enterprises, Inc.*, 735 F.2d 174, 177 (5th Cir. 1984).

[5] Although *Deus* went on to note that "[i]ntervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means," *id.* at 526, later Fifth Circuit courts found that the requirement of alternative interest-protection was limited to intervention as of right. *See Newby*, 443 F.3d at 422.

>expense for our client. At that point, you can ask us to place those documents under seal that you identify and we can agree or disagree. Your motion as drafted is very open-ended and not something I would agree to in any case.

(R. Doc. 292-2, p. 5). These communications clearly indicate that Smith is attempting to reach a compromise regarding production of the documents. However, the Court is not aware that any such compromise has been reached. Therefore, the Court considers the merits of McKesson's motion for intervention.

### B.     Permissive Intervention[6]

#### 1.     Common Question

Neither party disputes that McKesson's protective order has a "common question" with the issues in this case. Although McKesson's limited intervention will not "advance" the claims in the instant dispute, there is clearly a "common question" between the claims asserted by McKesson, and the issues for trial, as McKesson's proposed intervention pertains directly to evidence which will be introduced at the upcoming trial. As such, it clearly does not create an entirely new lawsuit within contemplation of *Deus*.

#### 2.     Adequate Representation

In support of its motion, McKesson argues that during the course of this dispute, its proprietary information has been produced into the record. (R. Doc. 292, p. 3). McKesson also argues that the issue of further disclosures should have already been resolved: on July 18, 2012, the Court orally ordered Smith and Ciolino to file a joint Protective Order, although to date no protective order has been signed. (R. Doc. 292-1, p. 3). Now on the eve of trial, McKesson now seeks to intervene in order to compel the entry of such an Order. *Id.*

Here, Smith clearly does not "represent" McKesson's interest as it seeks reserve the right to use McKesson's information and has opposed entry of a protective order. As to Ciolino, McKesson's interest is by no means "adequately represented" because even if Ciolino does not

---

[6] McKesson does not argue that it is entitled to intervene as of right pursuant to Rule 24(a).

oppose entry of the protective order, it has not filed any brief in support of the same.[7] For these reasons, the Court cannot find that McKesson's interest is adequately represented by Smith.

### 3. Prejudice to Existing Parties

In its Reply, McKesson argues that any burden placed on Smith is not onerous, because "Smith knows which of its trial exhibits are McKesson documents." (R. Doc. 302-2, p. 2). McKesson argues that unlike other types of intervention, "the court is not being asked to referee a discovery dispute," but requests only that both Smith and Ciolino identify in advance which documents they intend to introduce into the public record. *Id.*

In opposition, Smith contends that it has sought to compromise by providing McKesson's counsel with an exhibit list in this case. (R .Doc. 297, p. 2). It also contends that it should not be obligated to bear the cost of searching through the propounded discovery for responsive documents, as Smith's possession of the documents result from a breach of the confidentiality agreement that existed between McKesson and Ciolino. *Id.* at 3. Instead, Smith argues that the "burden of reviewing documents for confidentiality properly rests with the producing party, and it would be inequitable to shift this burden to the non-producing party." *Id.* at 4. Smith also argues that the protective order is premature because Smith and Ciolino have failed to "determine various evidentiary issues concerning the documents produced in this matter." (R. Doc. 297, p. 2). For these reasons, McKesson's limited intervention places an undue burden on Smith, and should be disallowed. *Id.* at 3.

McKesson's proposed limited intervention will not likely prejudice the rights of the existing parties, as deliberations over the Protective Order are ongoing between Smith and Ciolino, and will not necessarily delay the trial date. Moreover, as discussed in *Weiss*, standing for purposes of third-party intervention in discovery disputes can survive the end of trial, where the Court specifically retains jurisdiction over the Protective Order dispute. *See Weiss*, 2007 WL 2377116, at *3. Indeed, McKesson points out that "[t]he proposed Protective Order does not prevent the parties from using

---

[7] To the extent Ciolino could be said to "represent" McKesson's interests insofar as it obtained McKesson's proprietary information through an extraneous contract and is purportedly bound by its terms, the Court has not evaluated the contract and the contract does not, without more, appear to form a part of the dispute in this case.

the documents, but only serves to protect them from unnecessary disclosure." (R. Doc. 292-1, p. 4).

Admittedly, the circumstances are different from those in *Weiss*, in that McKesson does not seek to challenge an *existing* protective order, but seeks entry of one. As such, it arguably places an affirmative burden on Smith to analyze the discovery which has been produced to determine whether any of its proposed trial exhibits should be excluded.[8] However, this distinction can be overlooked for two reasons.

First, the Court remarked at a prior oral argument during July 2012 that the parties should enter a general Protective Order, and explicitly stated that at least one reason for a delayed ruling on a discovery motion was attributable to the fact that the Court had awaited, but the parties had failed to submit, a revised joint protective order. (R. Doc. 239, p. 6).[9] Even to the extent that the Court did not explicitly require the parties to submit a protective order, discovery of third party proprietary information was clearly foreseeable in this case and could have been avoided. Second, the Court notes that the presiding District Judge has already permitted McKesson to intervene for the limited purpose of placing documents under seal in connection with a prior summary judgment motion, and the parties could have reasonably expected McKesson to seek to maintain the confidentiality of any other documents divulged later during the discovery process. *See* (R. Doc. 160).

Finally, the Court notes that Smith and Ciolino have been working jointly to submit a protective order covering documents in this case since re-submission of a draft protective order on January 22, 2013, but as of the date this Order was issued have not yet been able to submit a satisfactory document to the Court. As such, the Court finds that allowing McKesson to intervene to represent its interests would aid in judicial economy.

---

[8] This issue provides additional weight for the proposition that Smith's "compromise," discussed above, should be adopted instead of allowing McKesson to intervene.

[9] The Court notes that the parties in fact submitted a joint protective order in this case on June 26, 2012, which was denied on July 19, 2012. (R. Docs. 102, 136). After this denial, the Court remarked in one of its many discovery orders in this case that it had been awaiting the arrival of another joint protective order for several months. *See* (R. Doc. 239, p. 6). However, the Court did not explicitly order the parties to enter such a protective order at that time.

For all of these reasons, the Court finds that McKesson should be granted leave to intervene for purposes of participating in the ongoing deliberations regarding a joint protective order. The Court also notes that because Smith and Ciolino have subsequently submitted several joint proposed protective orders, and there is no reason apparent to the Court that a general protective order should not govern submission of documents in this case. Therefore, for the sake of simplicity, the specific Protective Order submitted by McKesson into the record is denied. Instead, Smith, Ciolino, and McKesson should work jointly to submit a protective order into the Court.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the **Motion to Intervene for the Limited Purpose of Moving for Entry of Protective Order (R. Doc. 292)**, filed by non-party, McKesson Corporation, ("McKesson") is **GRANTED** in part and **DENIED** in part.

It is **GRANTED** as to permission of McKesson to intervene for purposes of filing a protective order. McKesson is directed to work with Defendant-in-Counterclaim, JM Smith Corporation d/b/a Smith Drug Company, ("Smith"), and Plaintiffs-in-Counterclaim, Ciolino Pharmacy Wholesale Distributors, LLC, C's Pharmacy No. 1, C's Pharmacy No. 2, JJK Wholesale Distributors, LLC, and Fast Access Speciality Therapeutics, LLC's, ("Ciolino") to submit a joint protective order to the Court.

It is **DENIED** as to the specific protective order submitted by McKesson into the record.

**IT IS FURTHER ORDERED** that Smith, Ciolino, and McKesson shall conference with the undersigned's law clerk to discuss and finalize a joint protective order no later than Monday, April 15, 2013.

New Orleans, Louisiana, this 2nd day of April 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**